# United States Court of Appeals
# for the Federal Circuit

---

**LONE STAR SILICON INNOVATIONS LLC,**
*Plaintiff-Appellant*

**v.**

**NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., NANYA TECHNOLOGY CORPORATION DELAWARE,**
*Defendants-Appellees*

---

2018-1581

---

Appeal from the United States District Court for the Northern District of California in No. 3:17-cv-04032-WHA, Judge William H. Alsup.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LONE STAR SILICON INNOVATIONS LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED MICROELECTRONICS CORPORATION, UMC GROUP (USA),**
*Defendants-Appellees*

---

2018-1582

---

Appeal from the United States District Court for the Northern District of California in No. 3:17-cv-04033-WHA, Judge William H. Alsup.

————————————

Decided: May 30, 2019

————————————

TIMOTHY P. MALONEY, Fitch, Even, Tabin & Flannery, Chicago, IL, argued for plaintiff-appellant. Also represented by DAVID ALLEN GOSSE, NICOLE L. LITTLE, JOSEPH F. MARINELLI.

PETER JAMES WIED, Nixon Peabody LLP, Los Angeles, CA, argued for all defendants-appellees. Defendants-appellees Nanya Technology Corporation, Nanya Technology Corporation U.S.A., Nanya Technology Corporation Delaware also represented by VINCENT K. YIP.

CHRISTOPHER KAO, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, CA, for defendants-appellees United Microelectronics Corporation, UMC Group (USA). Also represented by BROCK STEVEN WEBER.

————————————

Before O'MALLEY, REYNA, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Lone Star Silicon Innovations LLC ("Lone Star") sued Appellees[1] for infringing various patents.[2]  The district court concluded that Lone Star does not own these patents and therefore lacks the ability to assert them.  *In re Lone Star Silicon Innovations LLC*, No. 3:17-cv-03980-WHA, 2018 WL 500258, at *1 (N.D. Cal. Jan. 20, 2018).  We agree with the district court that Lone Star cannot assert these patents on its own.  But the district court should not have dismissed this case without considering whether Advanced Micro Devices, Inc. ("AMD"), the relevant patentee, should have been joined.  Its failure to address this issue was legally erroneous in view of Federal Rule of Civil Procedure 19 and our case law. We therefore vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. The Patent Transfer Agreement

The asserted patents were originally assigned to AMD, which later executed an agreement purporting to transfer "all right, title and interest" in the patents to Lone Star. The transfer agreement, however, imposes several limits on Lone Star.  For example, Lone Star agreed to only assert the covered patents against "Unlicensed Third Party Entit[ies]" specifically listed in the agreement. J.A. 2025; J.A. 2032.  New entities can only be added if Lone Star *and*

---

[1]    Appellees in these consolidated appeals include Nanya Technology Corporation, Nanya Technology Corporation U.S.A., and Nanya Technology Corporation Delaware ("Nanya") and United Microelectronics Corporation and UMC Group (USA) ("UMC").

[2]    These include U.S. Patent Nos. 5,912,188; 6,023,085; 6,097,061; 6,388,330; RE39,518; 5,973,372; 6,153,933; 5,872,038; 6,103,611; 6,326,231; 6,380,588; and 6,046,089 ("the asserted patents").

AMD both agree to add them. J.A. 2025; J.A. 2048. If Lone Star sues an unlisted entity, AMD has the right—without Lone Star's approval—to sublicense the covered patents to the unlisted target. J.A. 2028; J.A. 2032. AMD can also prevent Lone Star from assigning the patents or allowing them to enter the public domain. J.A. 2026 ("Any assignment of an Assigned Patent in violation of this Section 2.6 shall be void ab initio."); J.A. 2027 (explaining that if Lone Star intends to stop paying maintenance fees for a covered patent it must "notify AMD of its decision" and "assign the Abandoned Patent to AMD or to a Person selected by AMD in AMD's sole discretion if requested by AMD . . . ."). AMD and its customers can also continue to practice the patents, J.A. 2027, and AMD shares in any revenue Lone Star generates from the patents through "monetization efforts." J.A. 2029.

## B. District Court Litigation

Lone Star sued Appellees, who are all listed as Unlicensed Third Party Entities in the transfer agreement, in successive infringement actions filed between October 2016 and December 2016. In each case, Lone Star alleged, among other things, that AMD transferred "all right, title, and interest" in the asserted patents to Lone Star. *See, e.g.*, J.A. 2621. But it took Lone Star nearly a year after filing suit to produce the transfer agreement. Once it did, Appellees filed motions to dismiss their respective suits under Federal Rule of Civil Procedure 12(b)(1). J.A. 3913 (Nanya); J.A. 351 (UMC).

The district court granted Appellees' motions.[3] As the district court correctly explained, we have recognized three

---

[3]    Because the district court did not consolidate these cases below, it entered separate but identical orders as to Nanya and UMC (as well as other defendants whose appeals have been dismissed). For clarity, we will refer to a

categories of plaintiffs in patent infringement cases. *In re Lone Star*, 2018 WL 500258, at *3. First, a patentee, *i.e.*, one with "all rights or all substantial rights" in a patent, can sue in its own name. *Id.* Second, a licensee with "exclusionary rights" can sue along with the patentee. *Id.* And, finally, a licensee who lacks exclusionary rights has no authority to assert a patent (even along with the patentee). *Id.* The district court concluded that it only needed to address this first category "since Lone Star claims to be an 'assignee' and 'sole owner' of the patents-in-suit." *Id.* As the district court acknowledged, however, Lone Star had asked to join AMD so that, if Lone Star could not proceed alone, it could proceed along with AMD. *Id.* at *6.

In determining whether the agreement between AMD and Lone Star transferred "all substantial rights" to the asserted patents, the district court examined the rights transferred to Lone Star and those retained by AMD. *Id.* at *3 ("Whether an agreement constitutes an assignment or license depends not on the 'labels' or 'bare formalities' of title transfer but on the 'substance of what was granted.'"). The district court focused on three aspects of the transfer agreement in particular: (1) AMD's ability to control how Lone Star asserts or transfers the patents, (2) Lone Star's inability to practice the patents, and (3) AMD's right to share in "monetization efforts." *Id.* at *3–5. The district court then compared the balance of rights here to previous cases where we have said agreements did or did not transfer all substantial rights. *Id.* Ultimately, the district court concluded that AMD did not transfer all substantial rights in the patents to Lone Star. *Id.* at *6.

---

single order throughout. *See In re Lone Star*, 2018 WL 500258.

After it concluded that Lone Star could not sue in its own name, the district court dismissed the case. *Id.* And although it acknowledged that Lone Star had asked to join AMD, the district court concluded that doing so would "reward Lone Star for its litigation gimmick and unfairly prejudice defendants." *Id.* In particular, the district court emphasized that if AMD were joined it "would enjoy earlier filing dates for [its] claims than defendants would for any counterclaims for purposes of recovering damages." *Id.* (citing 35 U.S.C. § 286).

Lone Star timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

Lone Star argues that it possesses all substantial rights in the asserted patents and therefore can assert them in its own name. And, if it cannot, Lone Star maintains that it must be given an opportunity to join AMD as a plaintiff before this case is dismissed. Appellees argue that Lone Star does not possess all substantial rights and therefore lacks standing to bring suit and that the district court did not err in refusing to consider Lone Star's request to join AMD. We address these arguments below.

## A. All Substantial Rights

Title 35 allows a "patentee" to bring a civil action for patent infringement. 35 U.S.C. § 281. The term patentee includes the original patentee (whether the inventor or original assignee) and "successors in title." 35 U.S.C. § 100(d). But it does not include mere licensees. *See AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318–19 (Fed. Cir. 2009) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926)).

If the party asserting infringement is not the patent's original patentee, "the critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect,

an assignment or a mere license." *Id.* at 1319. In distinguishing between "an assignment" and a "mere license," we "examine whether the agreement transferred all substantial rights to the patents." *Id.* (internal quotation marks omitted). This inquiry depends on the substance of what was granted rather than formalities or magic words. *See Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions."). For example, in previous cases we have reviewed how an agreement affected who could use, assert, license, or transfer the covered patents. *Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (collecting cases). We have also considered whether the transferor retained reversionary rights in or ongoing control over the patents. *Id.* at 1360–61. But our ultimate task is not to tally the number of rights retained against those transferred. *See AsymmetRx*, 582 F.3d at 1321. Instead, we examine the "totality" of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent. *Id.*

If a party cannot bring suit in its own name, it may still bring suit along with the patentee so long as it possesses "exclusionary rights." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). In such a case, "the patentee who transferred these exclusionary rights is usually joined" according to Federal Rule of Civil Procedure 19. *Id.*

Against this backdrop, Lone Star asserts two reasons why it believes it may sue in its own name. First, it argues that the transfer agreement was a complete assignment because a single provision in the agreement conveyed "all right, title and interest" in the patents to Lone Star. J.A. 2025. Second, Lone Star argues that, even if we look beyond this provision, the transfer agreement gave it all substantial rights in the patents, at least with respect to

these alleged infringers.  The district court rejected both arguments.  We review the district court's conclusions de novo.  *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1347 (Fed. Cir. 2016).  We agree with the district court that, while Lone Star was given a number of rights in the transfer agreement, it was not given all substantial rights in the asserted patents.

### 1.  "All Right, Title and Interest"

Lone Star argues that our analysis begins and ends with the transfer agreement's broad conveyance of "all right, title and interest" in the covered patents.  J.A. 2025.  But, as the district court correctly recognized, the rest of the agreement "substantially curtail[s] Lone Star's rights." *Lone Star*, 2018 WL 500258 at *2.  To say that this amounts to an assignment because of the initial, broad grant ignores the total effect of the agreement.  Our analysis in these types of cases has never been so reliant on labels.  *See, e.g.*, *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016) ("We have not . . . treat[ed] bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred."); *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control. Rather, the court must determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner.").

Lone Star's reliance on *Rude v. Westcott*, 130 U.S. 152, 162-63 (1889), to support its argument is misplaced.  Appellant's Br. at 23–24.  In *Rude*, the Supreme Court concluded that a transferor retaining royalty rights did not affect ownership for the transferee because the royalties "reserve[d] to [the transferor] no control over the patents or their use or disposal, or any power to interfere with the management of the business growing out of their ownership."  130 U.S. at 163. This suggests that limits affecting

"control over the patents" might "modify or limit the absolute transfer of title." *Id.* Indeed, the Supreme Court cautioned two years later in *Waterman* that "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license *does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.*" 138 U.S. at 256 (emphasis added). That is consistent with our analysis here.

Lone Star also argues that the district court "misconstrued the [transfer agreement] at a fundamental level." Appellant Br. at 26. According to Lone Star, the broad conveyance of rights transferred AMD's rights to Lone Star. That AMD retains certain rights, such as the right to neutralize any enforcement effort by Lone Star against an unlisted target, reflects a "contractual promise[]" from Lone Star back to AMD rather than a limit on which rights were transferred to Lone Star. *Id.* at 27. But such a distinction finds no support in our case law. As stated above, the substance of the transaction is what matters and the substance of this transfer agreement gave AMD important rights in the patents. The relevant question here is whether AMD's rights, however retained or reacquired, include any substantial rights. *See AsymmetRx*, 582 F.3d at 1320 ("Although the AsymmetRx License effected a broad conveyance of rights to AsymmetRx, Harvard retained substantial interests . . . and AsymmetRx therefore does not have the right to sue for infringement as a 'patentee' under the patent statute."). Lone Star's argument invites us to ignore the totality of the circumstances and instead focus on a single part of the agreement. We decline to do so.

### 2. The Totality of the Transfer Agreement

We turn next to whether the "totality" of the transfer agreement reflects a transfer of all substantial rights in the asserted patents to Lone Star. *Id.* at 1321. We conclude that it does not.

In considering this question, we have often focused on two salient rights: enforcement and alienation. For example, in *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333 (Fed. Cir. 2001), we noted that the transferee could only bring suit, at least in some cases, with consent from the transferor. 248 F.3d at 1344. But, as we explained, "a transferee that receives all substantial patent rights from a transferor would *never* need consent from the transferor to file suit." *Id.* (emphasis added). The transferor also retained the right to prevent the transferee from assigning the patents at issue without prior consent. *Id.* at 1345. Again, we explained, this sort of restriction on alienation "weigh[ed] in favor of finding a transfer of fewer than all substantial rights." *Id.* Taken together, these facts indicated that the transferor retained substantial rights in the patents. *Id.* at 1345 ("In light of [the transferor's] right to permit infringement in certain cases, the requirement that [the transferor] consent to certain actions and be consulted in others, and the limits on [the transferee's] right to assign its interests in the '202 patent, we find that the [transfer] agreement at issue transfers fewer than all substantial rights in the '202 patent from [the transferor] to [the transferee]."). The extent of Lone Star's ability to enforce and alienate the asserted patents is also instructive.

As to enforcement, Lone Star needs AMD's consent to file suit against unlisted entities. For example, if Lone Star asserts the patents against a target that is not listed in the transfer agreement, then AMD can grant a sublicense and negate the lawsuit. AMD can also negate any effort to add new targets to the agreement. Lone Star's enforcement rights are, thus, illusory, at least in part. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000) (explaining that the right to sue is "illusory" when one party "can render that right nugatory by granting the alleged infringer a royalty-free sublicense"). Lone Star therefore does not possess the right to sue for "all infringement." *See*

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005) (concluding that the right to sue for *commercial* infringement, but not non-commercial infringement, signified that the transferee lacked "the exclusive right to sue for all infringement"). This suggests that Lone Star therefore lacks all substantial rights in the asserted patents. *See Intellectual Prop. Dev.*, 248 F.3d at 1344–45; *see also Diamond Coating*, 823 F.3d at 621 (agreeing with a district court's conclusion that a transferee's exclusionary rights were not "unfettered" because the transferor enumerated who it wanted the transferee to sue).

Lone Star emphasizes that it possesses the right to initiate lawsuits and the right to indulge infringement (by not initiating a lawsuit) at least as to unlicensed entities, which includes Appellees. It is true that we have treated the exclusive right to sue as significant. *See, e.g.*, *Sicom*, 427 F.3d at 979 ("[A]n important substantial right is the exclusive right to sue for patent infringement."); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) ("[T]he right to indulge infringements . . . normally accompanies a complete conveyance of the right to sue."). But, as explained above, it is AMD who decides whether Lone Star can challenge or indulge infringement with respect to *unlisted* targets. For example, if an unlisted entity begins practicing the patents, AMD—without Lone Star's consent—can indulge that infringement by refusing to add that party to the list of approved targets. AMD could even withhold its consent conditional on payments from the unlisted target. *See* Oral Arg. at 17:45–18:02, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1580.mp3.

Lone Star insists that restrictions on suing unlisted targets are irrelevant here because Appellees are all Unlicensed Third Party Entities. Appellant Br. at 32 ("[I]n *Diamond Coating* . . . and other similar cases, the transferor's retained control over litigation had the potential to impact the licensee's litigation conduct and

strategies with respect to the named defendants."). But we rejected this same argument in *Sicom*:

> We find unpersuasive Sicom's response that it is not suing Appellees' customers, nor suing for non-commercial infringement, and that this court should not consider risks that are outside the scope of the facts in this case. Sicom's focus on the parties in suit is misplaced where this court has established that the intention of the parties to the Agreement and the substance of what was granted are relevant factors in determining whether all substantial rights in a patent were conveyed.

*Sicom*, 427 F.3d at 979. The fact that the transfer agreement allows Lone Star to assert the patents against Appellees is important, but it is the effect of the agreement on the respective rights of the patentee and the transferee that controls.[4] *See, e.g.*, *Intellectual Prop. Dev.*, 248 F.3d at 1336 (concluding that a transferee that possessed the exclusive right to file suit still did not possess all substantial rights); *Diamond Coating*, 823 F.3d at 619 (same). And the effect of this agreement is that AMD did not fully transfer the right to enforce its patents. The fact that AMD may have transferred some rights, with respect to certain unlisted entities, does not mean it transferred all substantial rights in the full scope of the patent.

As to alienation, the agreement restricts Lone Star's ability to transfer the asserted patents. In particular, Lone Star cannot transfer the patents to a buyer unless that buyer agrees to be bound by the same restrictions as Lone Star. J.A. 2026. Otherwise, AMD can withhold its

---

[4]     For the same reason, the fact that Lone Star has paid the maintenance fees for the asserted patents does not negate the reversionary interest provided to AMD in the agreement.

required consent and halt the sale. While Lone Star argues that this restriction is insignificant because AMD cannot "unreasonably" withhold its consent, Lone Star concedes that it would be reasonable, indeed expected, for AMD to withhold consent if the prospective transferee refuses to be bound by the transfer agreement. Appellant's Br. at 46 ("In the full context of § 2.6, it would not be reasonable for AMD to withhold consent so long as [Lone Star] complied with the requirement . . . to secure the transferee's agreement to be bound by [the transfer agreement]."). Not only does this substantially restrict Lone Star's ability to transfer the patents, it ensures that AMD will always control how the patents are asserted. *See Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007) ("The right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a strong indicator that the agreement does not grant [the transferee] all substantial rights under the patent."). This is fundamentally inconsistent with a transfer of all substantial rights. Requiring Lone Star to assign the patents back to AMD, or an agent of its choice, before abandoning the patents has a similar effect. *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340–41 (Fed. Cir. 2006) (discussing how reversionary interests favoring the transferor signal, to varying degrees, a transfer of fewer than all substantial rights).

In addition to these restrictions on enforcement and alienation, several other aspects of the agreement further support our conclusion. For example, the agreement secures a share of Lone Star's "monetization efforts" for AMD. *See Propat*, 473 F.3d at 1191 ("[T]he fact that a patent owner has retained a right to a portion of the proceeds of the commercial exploitation of the patent . . . does not necessarily defeat what would otherwise be a transfer of all substantial rights . . . [but] the fact that [the transferor] retains a substantial share of the proceeds is consistent with [transferor's] retaining ownership rights in the

patent . . . ."). And the agreement allows AMD and its affiliates to make, use, and sell products practicing the patents. *See Diamond Coating*, 823 F.3d at 619 ("We have held that a licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights." (internal quotation marks omitted)). While these facts may not be dispositive alone, together they suggest that AMD did not transfer all substantial rights in its patents to Lone Star.[5]

Lone Star argues that the policy underpinning our "all substantial rights" test, the danger of multiple litigations against the same defendant by multiple plaintiffs, is not present here because AMD cannot sue Appellees. But we have also recognized a danger in allowing patentees to award a "hunting license" to third-parties. *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) ("[A] 'right to sue' clause cannot confer standing on a bare licensee . . . To hold otherwise would allow a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation, in the form of a *pro forma* exclusive license . . . The Supreme Court long ago disapproved of such arrangements."); *see also Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923) (concluding that the transfer of the right to sue for patent infringement, by itself, does not permit a plaintiff to bring suit for infringement in its own name); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 409 (2d Cir. 2018) ("*Crown Die* suggests to us that the realm of intellectual property law has

---

[5]    Relying on *Diamond Coating*, the district court also considered whether Lone Star has the right "to make, use, and sell products or services under the patent[s]." *In re Lone Star*, 2018 WL 500258, at *3 (referring to this "right" as "vitally important"). Even assuming Lone Star possesses such a right, our conclusion remains the same in view of the agreement as a whole.

special characteristics that place it outside of any generally permissive regime for the assignment of federal claims."). This additional policy concern lends support to our conclusion here.

In sum, we agree with the district court that AMD did not transfer all substantial rights in the asserted patents. Lone Star is therefore not the relevant patentee and cannot assert these patents in its own name under § 281.

## B. Article III Standing

Appellees argue that, because Lone Star is not a patentee and never explicitly alleged that it was an exclusive licensee, it lacks standing to bring suit. We disagree.

The Constitution of the United States vests judicial power in the federal courts. U.S. Const. art. III, § 1. That power may only be exercised to resolve "Cases" or "Controversies." *Id.* art. III, § 2. "The doctrine of constitutional standing serves to identify which disputes fall within these broad categories and therefore may be resolved by a federal court." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010). A party must establish standing, *i.e.* show that its case or controversy is amenable to resolution by a federal court, by demonstrating that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At the pleading stage, "general factual allegations . . . may suffice" to satisfy these requirements. *Id.* at 561.

We have recognized that those who possess "exclusionary rights" in a patent suffer an injury when their rights are infringed. *See, e.g.*, *WiAV*, 631 F.3d at 1264–65 ("[A] party holding one or more of those exclusionary rights— such as an exclusive licensee—suffers a legally cognizable injury when an unauthorized party encroaches upon those rights and therefore has standing to sue."). As we explained in *Morrow*, "exclusionary rights" involve the ability

to exclude others from practicing an invention or to "forgive activities that would normally be prohibited under the patent statutes." 499 F.3d at 1342. Lone Star alleged that it possesses the sort of exclusionary rights that confer Article III standing. *See, e.g.*, J.A. 13082–13084 (alleging that it possesses rights in the asserted patents). The transfer agreement, which is referenced in each complaint, also suggests as much. *See, e.g.*, J.A. 2621 (mentioning AMD's "assign[ment]" of rights to Lone Star); J.A. 2025 (allowing Lone Star to "collect royalties"). These rights distinguish Lone Star from the plaintiff in *Morrow*, who lacked the ability to grant licenses or "forgive" infringement. 499 F.3d at 1338–43. Lone Star also alleged that Appellees infringe its exclusionary rights. *See, e.g.*, J.A. 2623–2655. And it is clear that a court could redress an injury caused by that infringement. This is enough to confer standing at the pleadings stage. *See WiAV*, 631 F.3d at 1266 (noting that licensees "may have standing to sue some parties and not others").

Appellees insist that Lone Star lacks constitutional standing because it did not allege it was an "exclusive licensee." Appellees' Br. at 59 ("[Lone Star] has no basis for constitutional standing, for it never alleged that it is an exclusive licensee."). But constitutional standing also does not depend on labels; it is the substance of the allegations that matters. Lone Star adequately alleged that it possesses exclusionary rights and that Appellees infringe those rights. *See, e.g.*, J.A. 2621–2655. The fact that it believed its rights included all substantial rights does not mean its allegations fall short of alleging a cognizable injury. *Cf. Morrow*, 499 F.3d at 1340 (concluding that a party "hold[ing] exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent" still has constitutional standing to sue for infringement).

Although Lone Star cleared this constitutional threshold, the district court concluded that it lacked standing to proceed without AMD. But treating AMD's absence as

implicating Lone Star's standing confuses the requirements of Article III—which establish when a plaintiff may invoke the judicial power—and the requirements of § 281—which establish when a party may obtain relief under the patent laws. The district court's mistake, repeated by the parties on appeal, is understandable. Indeed, we have often treated "statutory standing," *i.e.* whether a party can sue under a statute such as § 281, as jurisdictional. *See AsymmetRx*, 582 F.3d at 1318 ("The issue of AsymmetRx's standing to bring suit without Harvard joining as a plaintiff was not raised by either party or by the district court. However, an appellate court must satisfy itself that it has standing and jurisdiction whether or not the parties have raised them.").

But the Supreme Court has recently clarified that so-called "statutory standing" defects do not implicate a court's subject-matter jurisdiction:

> We have on occasion referred to [whether a plaintiff may bring suit under a certain statute] as "statutory standing" and treated it as effectively jurisdictional . . . That label is an improvement over the language of "prudential standing," since it correctly places the focus on the statute. But it, too, is misleading, since "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case."

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *see also Flast v. Cohen*, 392 U.S. 83, 99 (1968) ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.").

*Lexmark* is irreconcilable with our earlier authority treating § 281 as a jurisdictional requirement. Indeed, following *Lexmark*, several courts have concluded that

motions to dismiss based on "statutory standing" defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional. *See, e.g.*, *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015) (noting that "[defendant's] Rule 12 motion to dismiss [because the plaintiff was not the owner of the copyright at issue] should have been brought under Rule 12(b)(6) . . . rather than under Rule 12(b)(1) . . . for the issue is statutory rather than Article III standing"); *John Wiley & Sons*, 882 F.3d at 402 n.4 (distinguishing between a plaintiff's "right to pursue a cause of action under the Copyright Act" and "Article III standing" in view of *Lexmark*). Where intervening Supreme Court precedent makes clear that our earlier decisions mischaracterized the effects of § 281, we are bound to follow that precedent rather than our own prior panel decisions. *Cf. Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014) ("It is established that a later panel can recognize that the court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority."). We therefore firmly bring ourselves into accord with *Lexmark* and our sister circuits by concluding that whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction.[6]

---

[6]   Although the district court erred in treating Appellees' motions as jurisdictional, its error was harmless because we review motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) de novo. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 732 n.3 (9th Cir. 2009) (acknowledging that "dismissal for lack of statutory standing is properly viewed as dismissal for failure to state a claim" but finding the error harmless in light of analogous standard of review).

Accordingly, although Lone Star does not possess all substantial rights in the asserted patents its allegations still satisfy Article III. *See Lexmark*, 572 U.S. at 128 n.4.

## C. Rule 19

Lone Star argues that, because it has standing, even if it lacks all substantial rights in the patents, it should be given an opportunity to join AMD as a necessary party before this case is dismissed. We agree. This result is compelled by Federal Rule of Civil Procedure 19 and our case law.

In *Independent Wireless*, the Supreme Court acknowledged that licensees cannot bring suit in their own name. 269 U.S. at 466–68. But the Court also concluded that an exclusive licensee should be able to join the patent owner, involuntarily if need be, to maintain suit. *Id.* at 473. Otherwise, the licensee possesses a right without a remedy. *Id.* at 472. Joinder, by contrast, "secur[es] justice to the exclusive licensee." *Id.* It also honors "the obligation the [patent] owner is under to allow the use of his name and title to protect all lawful exclusive licensees and sublicensees against infringers." *Id.* The joinder rule outlined in *Independent Wireless* was incorporated into Federal Rule of Civil Procedure 19. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1606 (3d ed. 2018) (noting that "the involuntary-plaintiff procedure" embodied in Rule 19 was "first enunciated by the Supreme Court in *Independent Wireless*" and observing that the rule "has been used extensively to allow the exclusive licensee of a patent or a copyright . . . to prosecute an action by compelling the joinder of the owner" (internal footnotes omitted)); *see also Caprio v. Wilson*, 513 F.2d 837, 839 (9th Cir. 1975) (acknowledging the same).

The rule of *Independent Wireless*, as incorporated into Rule 19, provides a clear command. A necessary party who is subject to service of process and whose joinder will not otherwise destroy a court's subject-matter jurisdiction

"must be joined." Fed. R. Civ. P. 19(a)(1). The rule extends its command directly to courts. *See* Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, *the court must order that the person be made a party*." (emphasis added)).

Of course, while the rule's command is mandatory, it is not inflexible. If a party whose joinder is otherwise required by part (a) cannot be feasibly joined, part (b) allows a court to consider whether the case should proceed anyway or be dismissed because that party is indispensable. Fed. R. Civ. P. 19(b); *see also A123 Sys.*, 626 F.3d at 1222 (concluding that dismissal was appropriate because the absent patent owner, who could not be joined because it had not waived sovereign immunity, "was not only a necessary party but also an indispensable party"). Put simply, the rule *requires* courts to engage with this two-step inquiry when a plaintiff asserts claims that also implicate the rights of necessary third parties.[7]

We have interpreted Rule 19 and *Independent Wireless* as directing courts to join patentees along with licensees who otherwise have standing. In *Abbott*, for example, we explained that such joinder is "required" and consistent with "the policies underlying Fed. R. Civ. P. 19." 47 F.3d

---

[7]    We have recognized a limited exception to Rule 19's mandatory command where the rule conflicts with "substantive patent rights." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014) ("[T]he right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a)."). Setting aside of the merits of such an exception, this is not a case where substantive patent rights and the rules of procedure point in different directions because, as *Independent Wireless* recognized, patent owners have no substantive patent right to shield themselves from being joined along with an appropriate licensee.

at 1133.  And, while the patentee in *Abbott* sought to voluntarily join the case, Rule 19 applies with equal force regardless of whether joinder is prompted by the patentee or the licensee.  In either case, the patentee must be joined, if feasible, when it is a necessary party.  Fed. R. Civ. P. 19. *Abbott* is no outlier in this respect.  *See, e.g., Intellectual Prop. Dev.*, 248 F.3d at 1347 ( "As a general rule, in accordance with *Independent Wireless*, this court adheres to the principle that a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit brought by an exclusive licensee having fewer than all substantial patent rights."); *Morrow*, 499 F.3d at 1340 (noting that "[a] patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns" and stating that "[t]his joinder analysis has been incorporated in Federal Rule of Civil Procedure 19"); *AsymmetRx*, 582 F.3d at 1321–22 (concluding that the plaintiff lacked all substantial rights in the asserted patents, but remanding for consideration of whether the patentee should be joined under Rule 19); *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1326 (Fed. Cir. 2013) (noting that our cases "strongly support the conclusion that patent owners are required to be joined if feasible under Rule 19(a)"); *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1385 (Fed. Cir. 2015) (acknowledging "our practice of endorsing joinder of patent owners . . . in order to avoid dismissal for lack of standing"); *see also* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1611 (3d ed. 2019) ("[T]he nonjoinder of someone described in Rule 19(a) does not result in a dismissal if that person can be made a party to the action.").

Joinder also furthers the purposes of Rule 19.  As the Supreme Court recognized in *Independent Wireless*, joining a patentee under Rule 19 helps "secur[e] justice" for licensees so they can vindicate their rights.  269 U.S. 472–73. It makes little sense here to ignore this rule, even if we

could, because the licensee brought suit thinking it was the patentee and turned out to be wrong. Joinder also ensures that the resulting judgment affords complete relief between AMD, Lone Star, and Appellees. *See AsymmetRx*, 582 F.3d at 1322 (concluding that "the purpose of Rule 19 . . . is best served by joinder of [the patentee], which would permit the relationships between [the licensee], [the defendant], and [the patentee] to all be resolved at the same time as well as solve the standing problem"); *Abbott*, 47 F.3d at 1133 (nothing that "[t]he purpose of Rule 19 . . . is thus served by joinder" to "permit [the patentee's] dispute with [the defendant] to be adjudicated along with [the licensee's]").

The district court's dismissal was inconsistent with Rule 19 and our case law. If AMD is the patentee, as the district court correctly concluded, then AMD's joinder would ordinarily be "required." *See Abbott*, 47 F.3d at 1133 (citing Rule 19). And since Lone Star agreed that AMD should be joined, assuming it retained substantial rights in the asserted patents, Lone Star essentially conceded that AMD is a necessary party. The district court therefore should have considered whether AMD's joinder was feasible. If so, then AMD must be joined—involuntarily if need be. If not, then the district court should consider whether AMD is indispensable. Rather than engaging in this analysis, however, the district court declined to join AMD because it thought doing so "would reward Lone Star" for a "litigation gimmick" and prejudice Appellees. *In re Lone Star*, 2018 WL 500258, at *6. But the application of Rule 19 is mandatory, not discretionary.[8]

---

[8]    Appellees contend that the decision to allow joinder of parties is discretionary under Rule 15. Appellees' Br. at 49 ("Rule 15(a)(2) . . . prove[s] that curative amendments are permissive, not mandatory, and fall within the district court's broad discretion."). But Rule 15 and Rule 19 serve

The district court also faulted Lone Star for not expressly alleging that it was an "exclusive licensee." *Id.* ("To repeat, Lone Star's complaints alleged only that it is an 'assignee' and 'sole owner' of the patents-in-suit. It cannot simply retreat to the position of an 'exclusive licensee' to evade arguments that it did not actually receive 'all substantial rights' in the patents-in-suit."). As explained above, Lone Star alleged that it possesses exclusionary rights. Although its rights are less than all substantial rights, we have consistently said that the cure for this defect is to join the patent owner and not to dismiss the case. *See, e.g.*, *Morrow*, 499 F.3d at 1340.

Appellees argue that Rule 19 is inapposite because it only applies where a district court dismisses for failure to join a party under Rule 12(b)(7). Appellees' Br. at 57 ("The Rule 19 cases and commentary . . . explain how courts should proceed in the face of motions to dismiss for failure to join a required party, which is a Rule 12(b)(7) motion."). In fact, some of the defendants below did move for dismissal under Rule 12(b)(7). *See, e.g.,* J.A. 14534. Regardless, Rule 19 is mandatory and so it applies whether a defendant invokes Rules 12(b)(1), (6), (7), or none of the above.

Finally, while Appellees point to cases in which we have affirmed dismissals where licensees lacked all substantial rights, these cases are distinguishable. Appellees' Br. at 51–53. In *Sicom*, for example, the licensee did not contest that its case should be dismissed assuming it could not establish that it possessed all substantial rights. 427 F.3d at 980 (noting that dismissal "is generally inappropriate where the standing defect can be cured"). But Lone Star argued in the alternative that the trial court should join AMD if the court found that Lone Star did not possess all substantial rights in the patents. In *Prima Tek II*, the

---

different functions. Where there is a request to join an absent party, it is Rule 19 that governs.

parties disputed whether we should join parties in the first instance on appeal, after a trial, where it was unclear that the patent owner could even be joined. 222 F.3d at 1381 (concluding that we should exercise our authority to join parties on appeal "sparingly" and noting that the patent owner may have been "beyond the jurisdiction of the district court"). And in *Propat*, we concluded that the licensee could not sue "even with [the transferor] named as a co-plaintiff," which is not the case here. 473 F.3d at 1194; *see also Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) (same).

Ultimately, once the district court correctly concluded that AMD did not transfer all substantial rights in the asserted patents to Lone Star, the district court should have considered whether AMD could have been or needed to be joined before dismissing this case. Its failure to do so was legally erroneous.

## III. Conclusion

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, we agree with the district court that Lone Star cannot bring suit in its own name because it does not possess all substantial rights in the asserted patents. But we vacate the district court's dismissal and remand with an instruction that it consider whether AMD must be joined here. We offer no view, however, on whether AMD must be or even can be joined. Our instruction to the district court is simply that it must consider the question.

**VACATED AND REMANDED**

COSTS

No costs.