# United States Court of Appeals for the Federal Circuit

---

**MOJAVE DESERT HOLDINGS, LLC,**
*Appellant*

**v.**

**CROCS, INC.,**
*Appellee*

---

2020-1167

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,100.

---

**ORDER ISSUED:** February 11, 2021
**ORDER MODIFIED:** April 21, 2021

---

## ON MOTION

---

MATT BERKOWITZ, Shearman & Sterling LLP, Menlo Park, CA, argued for appellant. Also represented by YUE WANG; PATRICK ROBERT COLSHER, MARK A. HANNEMANN, THOMAS R. MAKIN, New York, NY; LAURA KIERAN KIECKHEFER, San Francisco, CA.

MICHAEL BERTA, Arnold & Porter Kaye Scholer LLP, San Francisco, CA, argued for appellee. Also represented by SEAN MICHAEL CALLAGY; MARK CHRISTOPHER FLEMING,

Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA; BENJAMIN S. FERNANDEZ, Denver, CO.

———————————

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

DYK, *Circuit Judge.*

## O R D E R

U.S.A. Dawgs, Inc. appeals from a United States Patent and Trademark Office (USPTO) decision finding Crocs, Inc.'s design patent (No. D517,789) patentable. U.S.A. Dawgs and Mojave Desert Holdings, LLC move to substitute Mojave as U.S.A. Dawgs's successor-in-interest. For the reasons stated below, we grant U.S.A. Dawgs and Mojave's motion to substitute.

## BACKGROUND

Crocs, Inc. is the owner of U.S. Design Patent No. D517,789 ("the '789 patent"), titled "Footwear," which includes a single claim for the "ornamental design for footwear" and seven figures illustrating the claim. The '789 patent issued on March 28, 2006, and has expired. According to Crocs, the '789 patent "discloses what has become [its] iconic foam-molded clog design." J.A. 1698.

On August 6, 2012, Crocs sued U.S.A. Dawgs, Inc. for infringement of the '789 patent in the United States District Court for the District of Colorado based on U.S.A. Dawgs's manufacture and sale of its own form of foam-molded clog footwear. Shortly after Crocs filed, on August 24, 2012, U.S.A. Dawgs filed a third-party request for inter partes reexamination of the '789 patent at the USPTO

under 35 U.S.C. § 311.[1]  The USPTO ordered the reexamination on November 19, 2012.  The district court stayed the proceedings in light of the inter partes reexamination.  The examiner rejected the claim as anticipated under 35 U.S.C. § 102(b).  Crocs appealed to the Patent Trial and Appeal Board.

While the appeal was pending before the Board, on January 31, 2018, U.S.A. Dawgs filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada, where U.S.A. Dawgs is incorporated.  In May, U.S.A. Dawgs moved for the bankruptcy court to approve the sale of all of its assets "free and clear of all liens, claims, and encumbrances subject to 11 U.S.C. § 363(b) and (f)."[2]

On July 20, 2018, the bankruptcy court approved the sale of U.S.A. Dawgs's assets to a recently formed entity, Dawgs Holdings, LLC pursuant to the terms and conditions of an Asset Purchase Agreement.  The Asset Purchase Agreement assigned Dawgs Holdings

> [a]ll of [U.S.A. Dawgs's] right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including intellectual property and goodwill), of [U.S.A. Dawgs], wherever located and whether now existing or hereafter acquired, owned, leased, licensed or used or held for use in or relating to the operation of [U.S.A. Dawgs's] business as of the Closing Date.

---

[1]    All statutory provisions from Title 35 cited in this Order are to the statutes prior to the passage of the Leahy-Smith America Invents Act, 125 Stat. 284 (2011).

[2]    Mot. at 6, *In re U.S.A. Dawgs*, No. 18-bk-10453 (Bankr. D. Nev. May 25, 2018), ECF No. 314.

J.A. 3217.  In its order approving the sale, the bankruptcy court stated that

> [t]he transfer of Assets to the Prevailing Bidder under the Purchase Agreement will be as of the Closing Date a legal, valid, and effective transfer of the Assets and vests or will vest the Prevailing Bidder with all right, title, and interest of Debtor's estate to the Assets free and clear of all liens, claims . . . , encumbrances, obligations, liabilities, contractual commitments, or interests of any kind or nature whatsoever accruing, arising, or relating thereto prior to such Closing Date, including but not limited to, patent infringement claims . . . (collectively, the Claims"); *provided, however*, for the avoidance of doubt, the Sale [was] not free and clear of any Claims Crocs, Inc. . . . may hold for patent infringement occurring post-Closing Date by any person including the Prevailing Bidder, or any defenses Crocs may have in respect of any litigation claims that are sold pursuant to the Sale, including any rights to setoff or recoupment against such claims to the extent validly existing under applicable law (together, the "Retained Rights") and the Retained Rights are preserved in all respects.

J.A. 3175 (footnote omitted).[3]  The order thus made the transfer of the "litigation claims"—and only the "litigation

---

3    Following the phrase "any rights to setoff or recoupment," the court included a footnote, which stated that,

> [f]or the avoidance of doubt, in no event shall the retention by Crocs, if any, of any such defenses, including any rights to setoff or recoupment as set

claims"—subject to potential liability for past infringement.

U.S.A. Dawgs moved to distribute the net proceeds from the sale of its assets and to dismiss its Chapter 11 bankruptcy case.[4] On August 21, 2018, the bankruptcy court granted U.S.A. Dawgs's motion, authorizing the distribution of the net sale proceeds and dismissing U.S.A. Dawgs's Chapter 11 bankruptcy case.

Thereafter, in three closings, Dawgs Holdings assigned litigation claims, including all those against Crocs, "and the facts and circumstance giving rise to such [claims]" to Mojave, J.A. 3252, including, on August 15, 2018, explicitly the claims asserted by U.S.A. Dawgs in the District of Colorado action and the inter partes reexamination. On October 23, 2018, U.S.A. Dawgs dissolved but continued to exist

---

forth above, result in any affirmative claim by Crocs against Buyer, and shall in no case entitle Crocs to any monetary judgment or recovery against the Buyer.

J.A. 3175 n.2.

[4] "The general rule is that a distribution on pre-petition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances." *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc.* (*In re Air Beds, Inc.*), 92 B.R. 419, 422 (Bankr. 9th Cir. 1988). There is, however, an exception to the general rule, which permits a bankruptcy court to approve a "structured dismissal" in appropriate circumstances, as U.S.A. Dawgs requested here. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978–82, 985 (2017) (discussing structured dismissals but expressing no views as to their legality in general); *see also* 11 U.S.C. § 1112(b)(1).

for limited purposes, including "prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it" and "enabling it . . . to do every other act to wind up and liquidate its business and affairs." Nev. Rev. Stat. § 78.585.

Months later, on July 18, 2019, Mojave filed a petition with the Board titled, "Request to Change the Real-Party-in-Interest from Third-Party Requestor U.S.A. Dawgs, Inc. to Mojave Desert Holding, LLC in Inter Partes Reexamination/Hearing." J.A. 3100. The Board expunged and dismissed Mojave's request on August 9, 2019, on various grounds. First, the Board found that Mojave's

> submissions [were] insufficient to establish Mojave as a real party[-]in[-]interest and/or Requester in the instant *inter partes* reexamination proceeding, because the initial transfer of assets from U.S.A. Dawgs, Inc. to U.S.A. Dawgs Holdings, LLC . . . appears to be silent about any rights with regard to the instant inter partes reexamination proceeding.

J.A. 176 (citing *Agilent Techs., Inc. v. Waters Techs. Corp.*, 811 F.3d 1326, 1334 (Fed. Cir. 2016)).

Second, based on its interpretation of the transfer of assets, the Board rejected Mojave's filing because Mojave was "not a party to the instant *inter partes* reexamination proceeding" and did "not have standing to update the real party-in-interest in the proceeding pursuant to [37 C.F.R.] § 41.8(a)." J.A. 180. And third, the Board concluded that Mojave did not file its submission "within 20 days of any change [of the real party-in-interest] during the proceeding," as required by 37 C.F.R. § 41.8(a), making it untimely. J.A. 180.

The first and second grounds appear to be the same. Based on these grounds, the Board considered Mojave's

petition an "improper submission" under 37 C.F.R. § 1.905[5] and expunged it from the record and dismissed it as well. J.A. 173–74, 181–82.

On September 10, 2019, the Board issued its decision reversing the examiner's rejection of the '789 patent's sole claim. U.S.A. Dawgs appealed to this court. In its Notice of Appeal, U.S.A. Dawgs stated that Mojave "intend[ed] to file a motion for substitution of parties" with the court "pursuant to Federal Rule of Appellate Procedure 43(b)." Notice of Appeal at 1 n.1, ECF No. 1. On December 13, 2019, U.S.A. Dawgs and Mojave filed the motion to substitute.

---

[5] 37 C.F.R. § 1.905 states,

Unless specifically provided for, no submission on behalf of any third parties other than third party requesters as defined in 35 U.S.C. [§] 100(e) will be considered unless such submissions are in accordance with § 1.915 [governing the content of requests for inter partes reexaminations] or entered in the patent file prior to the date of the order for reexamination pursuant to § 1.931 [governing the order for inter partes reexamination]. Submissions by third parties, other than third party requesters, filed after the date of the order for reexamination pursuant to § 1.931, must meet the requirements of § 1.501 [governing the citation of prior art and written statements in patent files] and will be treated in accordance with § 1.902 [governing the processing of prior art citations during inter partes reexamination proceedings]. Submissions which do not meet the requirements of § 1.501 will be returned.

8                    MOJAVE DESERT HOLDINGS, LLC v. CROCS, INC.


We now address U.S.A. Dawgs and Mojave's motion to substitute.    We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

The motion to substitute is made pursuant to Rule 43(b) of the Federal Rules of Appellate Procedure, which provides that, "[i]f a party needs to be substituted for any reason other than death, the procedure prescribed in Rule 43(a) applies."  Fed. R. App. P. 43(b).[6]

> Substitution [under Rule 43(b)] may . . . be necessary when a party is incapable of continuing the suit, such as . . . when a transfer of interest in the company or property involved in the suit has occurred[] or when the focus of the litigation has shifted, making another entity the real party in interest.

21 James W. Moore et al., *Moore's Federal Practice – Civil* § 343.12 (2020).

---

[6]    Rule 43(a) provides in pertinent part:

(a) Death of a Party.

   . . .

   (2) Before Notice of Appeal Is Filed—Potential Appellant.  If a party entitled to appeal dies before filing a notice of appeal, the decedent's personal representative—or, if there is no personal representative, the decedent's attorney of record—may file a notice of appeal within the time prescribed by these rules.  After the notice of appeal is filed, substitution must be in accordance with Rule 43(a)(1).

Fed. R. App. P. 43(a)(2).

Crocs asserts that U.S.A. Dawgs and Mojave's motion to substitute should be denied for several reasons. We disagree.

I

Crocs argues that the Board correctly determined that Mojave is not the successor-in-interest to U.S.A. Dawgs with respect to the inter partes reexamination because the bankruptcy sale did not transfer U.S.A. Dawgs's interest as a requester to Dawgs Holdings and therefore the interest could not have been transferred to Mojave.

U.S.A. Dawgs assigned all of its assets to Dawgs Holdings through the bankruptcy sale. This assignment was comprehensive and was described as

> [a]ll of [U.S.A. Dawgs's] right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including intellectual property and goodwill), of [U.S.A. Dawgs], wherever located and whether now existing or hereafter acquired, owned, leased, licensed or used or held for use in or relating to the operation of [U.S.A. Dawgs's] business as of the Closing Date. Without limiting the generality of the foregoing, the Assets include, without limitation, all of the items described on Schedule B attached hereto and incorporated herein . . . .

J.A. 3217.

Crocs argues that this case is just like *Agilent Technologies, Inc. v. Waters Technologies Corp.*, 811 F.3d 1326 (Fed. Cir. 2016). In that case, Agilent claimed to be the successor-in-interest to Aurora, a company that filed a request for inter partes reexamination. *Id.* at 1332. According to Agilent, it acquired "substantially all" of the assets of Aurora. *Id.* But Aurora continued as an operating entity

and continued to participate before the Board.  *Id.* at 1332–33.  Noting that "'substantially all' does not mean 'all,'" we held that it was unclear whether Agilent was Aurora's successor-in-interest because the court "d[id] not know precisely what was transferred" in the assignments. *Id.* at 1332.

Here, all of U.S.A. Dawgs's interests were included as property of its estate when it filed for bankruptcy.  *See* 5 *Collier on Bankruptcy* ¶ 541.07 (16th ed. 2020) ("The [Bankruptcy] Code provides that *all* interests of the debtor in rights of action be included as property of the estate under [11 U.S.C. §] 541(a)(1).").  In contrast to *Agilent*, the first sale from U.S.A. Dawgs to Dawgs Holdings clearly transferred all of U.S.A. Dawgs's assets and claims and did so using broad language.  U.S.A. Dawgs did not need to enumerate each of its assets individually to effectuate the broad transfer.  U.S.A. Dawgs dissolved and did not continue to participate before the Board.  Under the circumstances, the transfer of all assets on its face included the rights in the Board proceeding.

In the second assignment, Dawgs Holdings assigned Mojave litigation claims, including all claims against Crocs, and, for clarity, specifically enumerated its interest as the requester in the inter partes reexamination.  The reassignment provided

> [t]hat for good and valuable consideration, . . . [Dawgs Holdings], by these presents does hereby sell, grant, and convey unto [Mojave] . . . all of [Dawgs Holdings's] right, title and interest in and to all of the Acquired Assets . . . , which, for the avoidance of doubt, is intended to and does include all rights of [Dawgs Holdings] in any post-grant proceeding before the U.S. Patent and Trademark Office concerning any of the patents at issue . . . ,

including without limitation, inter partes reexamination control no. 95/002,100.

J.A. 3267.[7]  As these assignments make clear, Mojave is the successor-in-interest of U.S.A. Dawgs with respect to the Board proceeding.

## II

In two sentences in its appeal brief, Crocs argues that, even if Mojave is a successor-in-interest to U.S.A. Dawgs, Mojave did not seek substitution before the Board for nearly a year after it acquired U.S.A. Dawgs's interest in the inter partes reexamination and that the Board properly denied substitution on this ground under 37 C.F.R. § 41.8(a).  Crocs does not assert that it argued this before the Board.

37 C.F.R. § 41.8(a) provides:

In an appeal brief . . . or at the initiation of a contested case . . . , and within 20 days of any change during the proceeding, a party must identify:

(1) Its real party-in-interest, and

---

[7]    The assignment explained that

[t]he 'Acquired Assets' being conveyed in this Agreement are the Claims . . . set forth . . . below (collectively, the 'Acquired Claims'), and all other rights arising out of the Acquired Claims and the facts and circumstances giving rise to such Acquired Claims, including any and all products and proceeds of the foregoing and the right to bring claims and counterclaims and raise defenses . . . .

J.A. 3252.

12          MOJAVE DESERT HOLDINGS, LLC v. CROCS, INC.

> (2) Each judicial or administrative proceeding
> that could affect, or be affected by, the Board
> proceeding.

We do not read 37 C.F.R. § 41.8(a) as permitting the Board to ignore a transfer of interest in an inter partes reexamination that has been assigned to a successor-in-interest. The purpose of the rule is to detect conflicts of interest and to enable enforcement of inter partes reexamination estoppel provisions.[8] The rule is not directly related to substitution. Notably, in the federal district courts, there is no time limit attached to a party moving for substitution on the basis of a transfer in interest. *See* Fed. R. Civ. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."). As Wright and Miller observe, "[s]ince Rule 25(c) is wholly permissive there is no time limit on moving to substitute under its provisions." 7C Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 1958 (3d ed. 2020). In line with this view, the Board has

---

[8]    MPEP § 1205.02 (9th ed. Rev. 10 2020) ("The identification of the real party in interest allows members of the Board to comply with ethics regulations associated with working in matters in which the member has a financial interest to avoid any potential conflict of interest."); MPEP § 2612 (8th ed. Rev. 7 2008) (noting that "it is the real party in interest that is subject to the estoppel provisions"); *id.* § 2686.04 (explaining the USPTO's procedures to enforce the inter partes reexamination estoppel provisions); *see also* 145 Cong. Rec. 26, 984 (1999) (statement of Sen. Hatch) (noting that the inter partes reexamination statute includes provisions  intended to "prevent abusive reexamination requests, including broad estoppel provisions").

permitted parties to continue appeals after a change in the real party-in-interest despite the parties not filing the notices as required by 37 C.F.R. § 41.8.[9]

If the Board were permitted to preclude substitution on the basis of a transfer in interest because of a late filing, this would defeat the important interest in having the proper party before the Board. The Board erred by not substituting Mojave as the third-party requester while the inter partes reexamination was pending before the Board.[10]

---

[9]    *See, e.g.*, *Ex parte Young*, No. 2014-2951, 2016 Pat. App. LEXIS 2112, at *1 n.1 (P.T.A.B. May 17, 2016) (permitting a party to continue with an appeal of an ex parte patent application under 37 C.F.R. § 41.8 despite not filing a notice of a change to the real party-in-interest within twenty days of a merger with another company but "remind[ing]" the party of its ongoing duty to do so); *Ex parte Bandholz*, No. 2014-2942, 2016 Pat. App. LEXIS 5083, at *1 n.1 (P.T.A.B. May 10, 2016) (permitting the same after assignment of the patent application to a new corporation).

[10]    We note that, in district court proceedings, a transfer of interest that occurs after the initiation of a lawsuit may cause the court to lose jurisdiction unless the jurisdictional defect caused by the transfer of the original party's interest is cured prior to the entry of final judgment. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203–04 & 1204 n.6 (Fed. Cir. 2005) (noting but not deciding the issue).

Here, the transfer of U.S.A. Dawgs's assets took place while the inter partes reexamination was pending before the Board at the USPTO, and substitution did not occur before the Board's final decision. Unlike cases before a federal court, however, Article III standing is not necessary at the USPTO. *Consumer Watchdog v. Wis. Alumni Rsch.*

### III

Crocs additionally argues that the interest of a requester cannot be assigned under the statute governing appeals from inter partes reexamination.

The right of a third-party requester to appeal to this court comes from 35 U.S.C. § 141, which states:

> A patent owner, or a third-party requester in an inter partes reexamination proceeding, who is in any reexamination proceeding dissatisfied with the final decision in an appeal to the Board . . . under section 134 may appeal the decision only to the United States Court of Appeals for the Federal Circuit.

We have previously concluded that the statutory structure prohibits "mere privies" from appealing a reexamination because, under the statutory structure, "mere privies lack a cause of action." *Agilent*, 811 F.3d at 1331. And we also observed that, "[w]hile the language of the statute does not explicitly forbid a change in the identity of the third-party requester over the course of the proceeding or on appeal, . . . it similarly does not appear to address whether and under what circumstances a change in the identity of the third-party requester can occur." *Id.* at 1332. We reserved the question whether the statute permitted substitution. *Id.* at 1332, 1334.

The Supreme Court's decision in *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008),

---

*Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014). As a result, the transfer of interest occurring before the Board had no effect on the Board's authority to decide the case. Crocs makes no argument that the timing of the transfer prevented the Board from deciding the case.

recognizes that, at common law, choses in action were generally assignable and appears to hold that this general rule is applicable to federal causes of action. As the Court explained, "history and precedents . . . make clear that courts have long found ways to allow assignees to bring suit." *Id.* at 285 (holding that a federal cause of action that permitted payphone operators to seek compensation from long-distance carriers for certain calls was assignable); *Spiller v. Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117, 133–36 (1920) (permitting assignment of federal causes of action for reparation orders made by the Interstate Commerce Commission "in the absence of any expression of a legislative intent to the contrary"); *see also John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 416–17 (2d Cir. 2018) (Parker, J., dissenting) (collecting cases). This rule applies even when the statute in question provides for suit by the transferor. *See Spiller*, 253 U.S. at 133–36.

To be sure, there are exceptions. In *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24 (1923), the Supreme Court held that the assignment of the right to sue for past patent infringement, by itself, does not give the assignee the right to bring suit without joining the patent owner. *Id.* at 39–41; *see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1233–34 (Fed. Cir. 2019) (recognizing that patentees cannot award a "hunting license" to third parties); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) (same). And the Second Circuit has held that the right to sue for copyright infringement cannot be assigned separately from the copyright owner's exclusive rights. *Wiley & Sons*, 882 F.3d at 410.

Both lines of cases rely on the policy against separating the right to exclude from the right to sue for infringement. Here, it may well be that the right of the requester to appeal cannot be separated from the requester's potential liability for past infringement. But that is not what

happened here.  The bankruptcy sale eliminated all claims against U.S.A. Dawgs for past patent infringement and the other assets in the sale were transferred free and clear of past infringement claims except for "any defenses Crocs may have in respect of any litigation claims that are sold pursuant to the Sale, including any rights to setoff or recoupment against such claims to the extent validly existing under applicable law (together, the 'Retained Rights') and the Retained Rights are preserved in all respect." J.A. 3175 (footnote omitted).  In their opening brief, U.S.A. Dawgs and Mojave explain that "Dawgs Holdings, LLC agreed to sell Mojave all of its rights (as acquired from [U.S.A.] Dawgs) in and to all claims against Crocs and the 'facts and circumstances giving rise to' those claims." Appellant's Br. 22.  And the District of Colorado specifically found that "Mojave purchased all of [U.S.A.] Dawgs's claims and expressly agree[d] to 'stand in Dawgs'[s] shoes' and 'tak[e] on liability' as to Crocs's claims." *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-605, 2020 WL 4004045, at \*2 (D. Colo. July 14, 2020).  Further, the '789 patent has expired, precluding the potential for future infringement liability.

Where, as here, the requester's right has been transferred together with any liability for past infringement, there is no reason that the requester's right to challenge the Board's decision cannot be effectively transferred.  We are aware of no case that suggests that a federal claim is lost when it is transferred together with any and all existing liability for past acts of infringement.  To refuse to recognize such a transfer would create a situation in which the assets acquired by the transferee remained potentially liable for infringement, but the transferee would have lost the right to challenge patent validity.  Crocs points to nothing in the statutory structure or legislative history of the inter partes reexamination statute that suggests that the general rule regarding the assignment of causes of action should not apply to this situation, and we similarly are

aware of none.  We hold that, under the statute, the requester's right (including its right to appeal) may be transferred at least when it occurs as part of the transfer of the requester's past infringement liability.

*Vaillancourt v. Becton Dickinson & Co.*, 749 F.3d 1368 (Fed. Cir. 2014), is not to the contrary.  In *Vaillancourt*, the individual owner of a patent transferred his interest in the patent to a corporation while an inter partes reexamination was pending before the Board.  *Id.* at 1369.  The Board affirmed the examiner's rejection, and the individual filed a notice of appeal to this court.  *Id.*  We concluded that the individual could not bring the appeal because the new corporation was "indisputably the owner of the . . . patent, and held all right, title, and interest to the patent when [the individual] filed the notice of appeal with this court."  *Id.* at 1370.  The court considered no issue of substitution because substitution had not been requested either before the Board or on appeal.  *Vaillancourt* is inapplicable.

IV

Crocs argues that, even if Mojave is the successor-in-interest to U.S.A. Dawgs, Mojave lacks standing because it does not face a potential suit for infringement.  Again, we disagree.

Article III of the Constitution limits the judicial power to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  It is well established that "the irreducible constitutional minimum of standing contains three elements":  injury in fact, causation, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable

by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

"These constitutional requirements for standing apply on appeal" and "apply with equal force to appeals from administrative agencies, such as the [USPTO], to the federal courts." *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (citations omitted). To establish an Article III injury on appeal from an inter partes reexamination, we have previously held that it is sufficient for an appellant to show that it has engaged in "activity that would give rise to a possible infringement suit." *Id.* at 1262.

Mojave suffers an Article III injury connected with the false advertising counterclaims in the District of Colorado litigation that it acquired from U.S.A. Dawgs. Mojave acquired U.S.A. Dawgs's false advertising counterclaims subject to "any rights to setoff or recoupment" by Crocs. J.A. 3175. Thus, Crocs's infringement claim, if successful, would reduce Crocs's liability on Mojave's false advertising claim.[11]

Mojave also meets the other two requirements of standing. Mojave's injury is traceable to the challenged '789 patent, which has been asserted by Crocs in the District of Colorado litigation, and would be redressed by a favorable

---

[11]    Crocs argues that it "readily agreed at oral argument that Mojave 'is not liable for infringement damages.'" Appellee's Mot. for Recons. 3–4. But, following that statement at oral argument, Crocs would not stipulate that Mojave did not have any liability for infringement damages based on the offset. Oral Arg. at 18:46–19:46, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1167_11032020.mp3.

ruling in this court that reversed the Board's finding of patentability of the '789 patent.

## V

Crocs also argues that Mojave failed to file a notice of appeal from the Board's decision. Mojave could not file a notice of appeal because it had not been added as a party by the Board to the inter partes reexamination proceeding. Under Nevada law, however, U.S.A. Dawgs retained the ability to file a protective notice of appeal[12] and did so on November 8, 2019. That was sufficient to confer jurisdiction on this court. Other courts have apparently reached similar conclusions. *See, e.g.*, *Barger v. City of Cartersville*, 348 F.3d 1289, 1291–93 (11th Cir. 2003) (determining that the notice of appeal filed by transferor was sufficient), *overruled on other grounds by Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017); *ELCA Enters., Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 190–91 (8th Cir. 1995) (permitting party denied substitution before the district court to appeal despite transferring all interest in lawsuit).

* * *

We therefore conclude that Mojave is the successor-in-interest to U.S.A. Dawgs, that it has standing to pursue this challenge to the '789 patent, and that the Board erred

---

[12] Nevada law permits U.S.A. Dawgs to "continue[] as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually . . . to wind up and liquidate its business and affairs, but not for the purpose of continuing the business for which it was established." Nev. Rev. Stat. § 78.585.

in not substituting Mojave for U.S.A. Dawgs as the third-party requester during the inter partes reexamination.

Under these circumstances, we think that no useful purpose would be served by remanding to the Board to add Mojave as the requester and that the appropriate course is to grant the motion to substitute on appeal pursuant to Rule 43(b) of the Federal Rules of Appellate Procedure. *See Mullaney v. Anderson*, 342 U.S. 415, 417 (1952);[13] *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833–34 (1989) (reaffirming *Mullaney*); *Carlton v. Baww, Inc.*, 751 F.2d 781, 789 (5th Cir. 1985) (permitting amendment to a pleading at the appellate court because "it appear[ed] plainly from [the] record that jurisdiction exists," and as a result, "it best serve[d] the interests of justice to grant the motion for leave to amend [in the appellate court], without requiring a perfunctory remand for that purpose" (citations omitted)).

Accordingly,

IT IS ORDERED THAT:

(1)  The motion to substitute is granted.

---

[13]  In *Mullaney*, while on review in the Supreme Court, the Court added plaintiffs to the litigation under Federal Rule of Civil Procedure 21 without requiring the new plaintiff to return to the district court because of the "special circumstances" before the Court, including that returning to the district court "would entail needless waste and runs counter to the effective judicial administration," that changing the parties would not have "affected the course of the litigation" if it had occurred at some earlier point, and that amending the parties in this way would "rarely come into play" at such a late stage in litigation. 342 U.S. at 417.

MOJAVE DESERT HOLDINGS, LLC v. CROCS, INC.                    21

(2)  The revised official caption is reflected above.


                                        FOR THE COURT

April 21, 2021                          /s/ Peter R. Marksteiner
      Date                              Peter R. Marksteiner
                                        Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

―――――――――

**MOJAVE DESERT HOLDINGS, LLC,**
*Appellant*

**v.**

**CROCS, INC.,**
*Appellee*

―――――――――

2020-1167

―――――――――

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,100.

―――――――――

**ON MOTION**

―――――――――

O'MALLEY, *Circuit Judge*, dissenting.

For the reasons given in the Appellee's Motion for Reconsideration, I respectfully dissent from the Majority's modified order.