95 F.3d 1164
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
McNEILAB, INC., Plaintiff-Appellant,
v.
SCANDIPHARM, INC., Defendant/Third Party Plaintiff-Appellee,
and
BASF AKTIENGESELLSCHAFT, Third Party Defendant.
 No. 94-1508.
 United States Court of Appeals,
 Federal Circuit.
 July 31, 1996.
 
 Before NEWMAN, MAYER, and PLAGER, Circuit Judges.
 NEWMAN, Circuit Judge.
 The principal issues of law are (1) the standing of exclusive licensee McNeilab, Inc. (herein McNeilab or McNeil) to bring this suit against Scandipharm, Inc. for patent infringement, and (2) whether the patentee, BASF Aktiengesellschaft, is a necessary party. On motion of BASF the district court had dismissed Scandipharm's third party complaint against BASF. The court then dismissed McNeilab's infringement suit against Scandipharm for absence of BASF as a necessary party.[1] McNeilab appeals the judgment that it lacks standing without joinder of BASF. We conclude that BASF is not a necessary party to this suit, and that McNeilab has standing to sue and recover damages for infringement. The district court's decision is affirmed in part, reversed in part, and remanded.
 
 McNEILAB'S STANDING TO SUE
 
 1
 It is necessary to distinguish between a licensee's standing to sue, and the requirement that the patentee be party to the suit along with the licensee. Although the considerations are related, they are not identical.
 
 
 2
 A licensee that has an insufficient property interest in the patented subject matter has no standing to bring suit for infringement, whether or not the patentee is joined in the suit. Thus a licensee that has only the non-exclusive right to practice a patented invention is deemed not to have a judicially enforceable interest against an infringer, but is viewed as possessing only an immunity from exclusion by the patent owner. A simple non-exclusive license does not encompass the legal right to exclude others, and the non-exclusive licensee does not have the right to prevent infringement of the patent by others. See generally Kalman v. Berlyn Corp. 914 F.2d 1473, 1481, 16 USPQ2d 1093, 1099 (Fed.Cir.1990) ("It is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement.").
 
 
 3
 In contrast, grant by the patentee of the exclusive license to make, use, and sell an invention is deemed to be the grant to the licensee of all substantial rights in the patent, including the right to exclude all others. The licensee occupies the patentee's entire property interest, with the right to protect and preserve that interest and to remedy violations thereof. Although title to the patent remains in the patentee, the patentee is not a necessary party to suit brought by the exclusive licensee, when the patentee has retained no substantial rights in the licensed subject matter. Such licensee can sue infringers in its own name and without joinder of the patentee. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.p.A., 944 F.2d 870, 875, 20 USPQ2d 1045, 1049 (Fed.Cir.1991).
 
 
 4
 Between the extremes of the fully exclusive and the bare non-exclusive license there is a continuum of practical commercial arrangements. Depending on the alignment of rights and obligations, a licensee that has a sufficiently substantial interest in the patent to be entitled to damages for infringement may nonetheless be required to join the patentee in an infringement suit, in order to protect the defendant against multiple suits for the same infraction. The retention by the patentee of an interest sufficient to support an independent action for damages is the basis of the requirement that the patentee be joined in the suit.
 
 
 5
 The variety of commercial arrangements that have been embraced in the rule that when less than all substantial rights are transferred from the patentee to a licensee, the patentee and licensee should be joined in the suit is illustrated in, e.g., Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1131, 33 USPQ2d 1771, 1774 (Fed.Cir.1995) (patentee retained certain rights to make, use, and sell the patented product, and should have been joined in the infringement action); Kalman, 914 F.2d at 1481-82, 16 USPQ2d at 1099 (sole manufacturing licensee should have been joined with the patentee since both had standing to sue for infringement); Weinar v. Rollform, Inc., 744 F.2d 797, 806-07, 223 USPQ 369, 374-75 (Fed.Cir.1984), cert. denied, 470 U.S. 1084 (1985) (licensee having exclusive right to sell had standing to join with the patentee and recover damages from the infringer).
 
 
 6
 The Federal Rules of Civil Procedure authorize joinder of a necessary party, either voluntarily or involuntarily, as the circumstances may warrant. Fed.R.Civ.P. 19; Abbott Labs., 47 F.3d at 1133, 33 USPQ2d at 1776. This procedure has long been available. See Independent Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459 (1926) (the assignee, who retained non-exclusive rights for certain uses, was a necessary party and could be joined involuntarily in a suit brought by the exclusive licensee for other uses). Although subject to interpretation at the margins, precedent generally supports the right of the exclusive licensee to sue for infringement without joining the patentee as a party when the license transfers all substantial patent rights, leaving no patent rights with the patentee; but when the patentee has retained any substantial right under the patent, the patentee must be a party to the suit and may be involuntarily joined.
 
 
 7
 Scandipharm argues that the exclusive license to McNeil did not impart standing to sue without joinder of BASF because (1) McNeil was not licensed for all of the products within the scope of the two BASF patents, (2) BASF retained certain security interests, (3) there was a restriction against assignment of the license, and (4) BASF may have retained the right to sue infringers. We review these points seriatim.
 
 1. The Licensed Product
 
 8
 The licensed product is a cylindrical microtablet containing a specific pancreatic enzyme, described and claimed in BASF's United States Patents No. 4,797,287 and No. 4,828,843. Claim 1 of the '287 patent is as follows:
 
 
 9
 1. A cylindrical pharmaceutical microtablet consisting essentially of pancreatin, said microtablet having a convex upper face and convex lower face, wherein the cylinder diameter and the height independently of one another are each from 1.0 to 2.5 mm, the ratio from the said diameter to the said height being from 1:0.5 to 1:1.5, and the radius of curvature r of the convex upper and lower faces of the cylindrical microtablet is from 0.6 to 1.5 times the diameter of the cylinder.
 
 
 10
 BASF, through its subsidiary Knoll AG (KAG), granted McNeilab and its McNeil Pharmaceutical Division the exclusive patent and knowhow license to make, use, and sell the product. At the time the agreement was entered into, the license grant was as follows:
 
 
 11
 KAG hereby grants to McNeil a right and license to use the Know-How relating to the Product and the Patent Rights to make, use and sell the Product within the Territory. Such right and license shall be exclusive.
 
 
 12
 Scandipharm argued that because the patents include formulations or dimensions other than the precise "Product" that is made and sold by McNeil, the license is not an exclusive license and does not impart standing to sue without joinder of BASF. The district court agreed.
 
 
 13
 McNeil states that BASF retained no right to make, use, or sell the product that is exclusively licensed by the agreement, and that there is no other substantial patent right. McNeil states that since BASF retained no substantial patent right, McNeil's property interest as exclusive licensee is in substance that of an assignee. Cf. Novacolor, Inc. v. American Film Technologies, Inc., No. 91 C 6213, 1992 WL 170564 (N.D.Ill.) (when the licensed rights were "in reality, the commercial value, and thus the very essence, of Novacolor's patents" the licensees had become "in economic reality the assignees of the patent.") On the facts of this case McNeil's standing was not diminished because the exclusive license, at the time of its grant, defined the licensed subject matter as the product of commercial interest.
 
 2. BASF's Retained Interests
 
 14
 The agreement provides that either BASF or McNeil can terminate the license in the event of default and certain other events. As summarized by the district court:
 
 
 15
 Either party may terminate the agreement on ninety days' written notice of default by the other party if there is failure to cure the default within the ninety day period. Either party may terminate the Agreement immediately if the Agreement becomes void or unenforceable as a result of governmental action, if unreasonable burdens or excessive liabilities are imposed on a party with respect to its performance, or if the other party is insolvent, bankrupt, or liquidated. KAG may terminate the Agreement if McNeil Pharmaceutical Division becomes unaffiliated with Johnson & Johnson.
 
 
 16
 McNeilab, Inc. v. Scandipharm, Inc., 862 F.Supp. 1351, 1360 (E.D.Pa.1994) (Citations to Agreement omitted).
 
 
 17
 The right of the patentee to terminate the license in the event of the licensee's failure of performance does not negate the substantiality of the exclusive transfer of all rights to make, use, and sell the licensed product. Vaupel, 944 F.2d at 875, 20 USPQ2d at 1049. Recovery of the patent right, should the arrangement fail through no fault of the patentee, is a common security provision when payment depends on the licensee's future performance. Such provision for contingencies that may defeat the entire arrangement does not change the fundamental nature of the agreement. Reasonable provision for unintended possibilities or force majeure does not defeat the substantiality of the transfer of the exclusive right to make, use, and sell the patented subject matter.
 
 3. The Restriction on Alienation
 
 18
 The agreement required that McNeilab obtain the consent of the patentee to any assignment of the license other than to an affiliated company. The district court held that this contractual restraint on assignability "substantially impaired McNeilab's claim that it is an assignee."
 
 
 19
 When payment depends on the licensee's commercial performance in the future, the grant of the exclusive right to make, use, and sell the licensed subject matter is not significantly diminished by reasonable conditions to assure that the license remains with the chosen licensee. See Vaupel, 944 F.2d at 875, 20 USPQ at 1049 ("The sublicensing veto was a minor derogation from the grant of rights."); Watson v. United States, 222 F.2d 689, 691, 105 USPQ 352, 354 (10th Cir.1955) ("That precautionary provision [prohibiting assignment without consent] was intended to protect the rights of the parties under the contract, not to proscribe, limit, or nullify their intent and purpose to vest immediately in the transferee the right to manufacture, sell, and use the [patented invention].")
 
 
 20
 The restriction on alienation did not restrain McNeilab's full exercise of the exclusive license to make, use, and sell the patented subject matter. This was not a retention by BASF of a substantial right under the patent, but a safeguard of the bargained-for consideration, which was based on the licensee's performance. Thus this contract term did not of itself defeat McNeilab's standing to sue, and its right to do so without joining the patentee.
 
 4. The Right to Sue Infringers
 
 21
 The license agreement states that the patentee is not obligated to sue infringers, in the following provision:
 
 
 22
 6.10 Negation of Warranties. Nothing in this Agreement shall be construed as:
 
 
 23
 (a) a warranty [that the licensed product] is or will be free of infringement of patents of third parties; or
 
 
 24
 (b) an obligation to bring or prosecute actions or suits against third parties for infringement. However, should KAG choose not to enforce any of the rights licensed to McNeil hereunder within a reasonable amount of time after learning of such infringement, McNeil shall be permitted to bring or prosecute such actions or suits in its own right and with the right to retain all awards recovered thereby.
 
 
 25
 The district court described clause 6.10(b) as a "significant retention of rights by KAG," stating that "the right to sue therefore rests with KAG, not McNeil." The district court concluded that despite the clause's permission to McNeil to sue in its own right, McNeil did not have standing to sue without KAG's presence as a party.
 
 
 26
 We read this clause to different effect. Clause 6.10 is a "negation," not a grant or retention of a right. Clause 6.10(b) states that KAG is not obligated to sue infringers: the parties stated their contractual intent to negate any such obligation, thus resolving any potential future question on this point, as is the role of well-drafted agreements. Thus McNeil can not, by this contract, require BASF (KAG) to bring or prosecute this infringement action. Nor can BASF bar McNeil's enforcement of the patents against infringers; indeed, it states that McNeil need not share any proceeds with the patentee, again resolving possible uncertainty in this fuzzy area of law. Clause 6.10(b) does not place on BASF the obligation to sue infringers; it negates such obligation.
 
 
 27
 Clause 6.10(b) does not change McNeil's exclusive license to make, use, and sell the licensed product. This contractual "negation" of any obligation upon BASF to sue infringers is not the retention by BASF of a substantial right in the licensed patents.
 
 5. The Totality of These Provisions
 
 28
 Scandipharm argues that even if any one of these provisions is not viewed as the retention of a substantial patent right, taken together they weigh as substantial. Viewing the totality of the challenged provisions, we conclude that they do not defeat the completeness of the transfer. BASF can neither practice the licensed invention nor authorize anyone else to do so. BASF's right to terminate in the event of default or nonperformance, the restriction on alienation, and BASF's negation of any obligation to enforce the patent against infringers, do not affect the exclusivity of McNeil's license; they are merely safeguards against conditions subsequent. Precedent is in accord. See Vaupel, 944 F.2d at 875, 20 USPQ2d at 1049 (suit by exclusive licensee when patentee retained insubstantial rights); Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc., 73 F.3d 1085, 1087, 37 USPQ2d 1237, 1238 (Fed.Cir.1995) (suit by exclusive licensee with exclusive right to sue for infringement); Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011, 152 USPQ 182, 184 (Ct.Cl.1967) (clauses in exclusive patent license agreement that reserved certain rights to the patentee are conditions subsequent and do not defeat the tax status of the license as a sale). Cf. Radionics, Inc. v. Elekta Instrument AB, 33 USPQ2d 1110, 1113 (D.Mass.1994) ("An [exclusive license] agreement transferring all substantial rights and retaining only incidental ones is an assignment and provides the assignee standing to sue for infringement."); Ciba-Geigy Corp. v. Alza Corp., 804 F.Supp. 614, 633, 26 USPQ2d 1321, 1335 (D.N.J.1992) ("this Court finds that the Regents transferred substantial rights to exclusivity, to transfer, and to institute a lawsuit under the patent .... the Regents is not a necessary party to this action under Rule 19(a).")
 
 
 29
 Thus the courts have viewed the licensee with the exclusive right to make, use, and sell the patented subject matter as legally equivalent to the assignee for the purpose of determining standing to sue for infringement. The courts have recognized that there is no substantive difference between the property interests of the exclusive licensee and the assignee of the patent, and thus have sometimes used the terms interchangeably, subordinating the purity of the distinction to the reality of the legal rights. See, e.g., Waterman v. Mackenzie, 138 U.S. 252, 255 (1891) (the transfer of "the exclusive right to make, use and vend the invention ... is an assignment, properly speaking"). We agree that there is no substantive difference between the property interests of an assignee and of an exclusive licensee who has been granted all substantial patent rights including the right to exclude the patentee. Although it would be more accurate to preserve the distinction whereby the term "assignment" is reserved for transfers that include nominal title, we agree with precedent that when the transfer includes all substantial patent rights including the right to exclude the transferor, there is no significant difference between the rights transferred by assignment and those transferred by exclusive license.
 
 
 30
 On the facts of this case and in accordance with precedent, we conclude that McNeil has standing to sue in its own name and without joinder of BASF.
 
 THE THIRD PARTY COMPLAINT
 
 31
 Scandipharm imports its accused product from the Italian company Eurand International S.p.A. Scandipharm represented to the district court that Eurand and BASF have a contractual arrangement in Europe concerning this product, and that Scandipharm benefits from that arrangement as a defense against infringement in the United States. The district court held that any arrangement in Europe, to which neither McNeil nor Scandipharm is a party, did not state a cause of action relevant to this action for infringement of United States patents. The court granted BASF's request for dismissal of Scandipharm's third party complaint,[2] and denied a request by Eurand to intervene in the action. Although Scandipharm states that these actions were incorrect, we conclude that the district court acted correctly in dismissing Scandipharm's third party complaint and in denying Eurand's request to intervene.
 
 Summary
 
 32
 The dismissal of McNeilab's suit against Scandipharm is reversed. The dismissal of the third party complaint is affirmed. The case is remanded for further proceedings.
 
 
 33
 Taxable costs in favor of McNeilab.
 
 
 
 [1]
 McNeilab, Inc. v. Scandipharm, Inc., 862 F.Supp. 1351 (E.D.Pa.1994) (Memorandum and Order)
 
 
 [2]
 BASF made a written commitment to the district court to cooperate in reasonable discovery and to be bound by the judgment. Scandipharm does not assert that any additional assurances are required on these issues