NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RIDGE CORP.,**
*Plaintiff-Appellee*

**v.**

**KIRK NATIONAL LEASE CO., TRUCK & TRAILER PARTS SOLUTIONS, INC., ALTUM LLC,**
*Defendants-Appellants*

---

2024-1138

---

Appeal from the United States District Court for the Southern District of Ohio in No. 2:23-cv-03012-ALM-KAJ, Judge Algenon L. Marbley.

---

Decided: August 1, 2024

---

CHRISTOPHER WARREN TACKETT, Bailey Cavalieri LLC, Columbus, OH, argued for plaintiff-appellee. Also represented by GRAYCEN WOOD.

DONALD E. BURTON, Faruki PLL, Dayton, OH, argued for defendants-appellants Kirk National Lease Co., Truck & Trailer Parts Solutions, Inc. Also represented by MELISSA L. WATT, Cincinnati, OH; JOSHUA A. KOLTAK, MICHAEL SCARPELLI, Faulkner, Garmhausen, Keister &

Shenk, Sidney, OH.

TIFFANY L. CARWILE, Arnold & Clifford LLP, Columbus, OH, argued for defendant-appellant Altum LLC. Also represented by DAMION M. CLIFFORD, MICHAEL LEE DILLARD, JR., GERHARDT A. GOSNELL, II.

_____

Before DYK, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Kirk NationaLease Co., Truck & Trailer Parts Solutions Inc. (together, "KNL"), and Altum LLC ("Altum") (collectively, "Appellants") appeal the district court's grant of Appellee Ridge Corp.'s ("Ridge") motion for a preliminary injunction and denial of Altum's motion to join Cold Chain, LLC ("Cold Chain"), the owner of United States Patent No. 9,151,084 (the "'084 patent"). For the reasons that follow, we vacate the district court's denial of joinder and grant of preliminary injunctive relief, and we remand for proceedings consistent with this opinion.

BACKGROUND

KNL leases and performs maintenance on commercial trucks and trailers. KNL also re-sells panel doors for use in trucks and trailers. Altum is a composites manufacturer specializing in reinforced thermoplastic products and the joining of dissimilar materials. The doors marketed and sold by KNL use Altum's panels.

Ridge is a manufacturing and engineering company that, among other things, produces advanced composites for use in trucks and trailers. On February 15, 2023, Ridge became the exclusive licensee of the '084 patent, which Cold Chain owns. The '084 patent is directed to "[a]n article of manufacture for use as an insulated overhead door." '084 patent Abstract. On May 1, 2023, Cold Chain and Ridge "amended and restated" their exclusive license

agreement (the "Agreement").  J.A. 5; J.A. 261–72.  In pertinent part, the Agreement provides:

> [§ 3] <u>Grant of License</u>.  Licensor [Cold Chain] hereby grants to Licensee [Ridge] an exclusive, royalty bearing, nontransferable, sublicensable right and license to make, have made, use, sell, install, service, import/export and/or otherwise commercialize [truck roll-up doors, trailer roll-up doors or other roll-up door applications that include every limitation of at least one valid and enforceable claim of the '084 patent] in [all countries of the world] (the "<u>License</u>").  Notwithstanding the foregoing, Licensee's right of sublicense shall: (a) be limited to sublicensing to those sublicensees that agree to purchase and use [roll-up door panels sold by Licensee Ridge] in the manufacture and sale of other [truck roll-up doors, trailer roll-up doors or other roll-up door applications that include every limitation of at least one valid and enforceable claim of the '084 patent] (each a, "<u>Door Manufacturer</u>"); (b) be granted in each instance for a period no longer than the term of this Agreement . . . ; and (c) not be farther sublicensable by Door Manufacturers.  Except for the licenses granted to Licensee in this Section (including, without limit, attendant rights of sublicense to Door Manufacturers), Licensor hereby expressly retains all rights, title and interest in and to all Licensed Patents and Licensor's other intellectual property; and, no other rights are or shall be deemed to be granted to Licensee by implication, estoppel, statute, operation of law or otherwise pursuant to this Agreement.
>
> . . .
>
> [§ 6(a)] <u>Royalty Percentage</u>.  . . . Licensee [Ridge] shall pay to Licensor [Cold Chain] a Royalty in the amount of five percent (5%) of the Net Sales Price

of (i) all [roll-up door panels sold by Licensee Ridge] and (ii) all [truck roll-up doors, trailer roll-up doors or other roll-up door applications that include every limitation of at least one valid and enforceable claim of the '084 patent], if any, which are sold by Licensee itself in [all countries of the world]; provided, however, that no such Royalties shall apply to and/or accrue before and until May l, 2025 as additional consideration for Licensee's best efforts to commercialize the Licensed Patent.

. . .

[§ 14] <u>Infringement Actions</u>.  Subject to the following, both Licensor [Cold Chain] and Licensee [Ridge] shall have the right to initiate a patent infringement action against any third party reasonably believed to be infringing a Licensed Patent, but neither party shall have any obligation to do so.  Licensee shall give Licensor the option by written notice of initiating any such action before doing so itself (or issuing any demand or threat of such action).  If Licensee initiates such action or the parties cooperatively initiate a joint action: (i) Licensee and Licensor shall share equally all attendant costs and expenses incurred by Licensee and/or Licensor up to an aggregate amount of US $2,000,000 ("<u>Maximum Shared Costs</u>") and, accordingly, Licensee shall indemnify, defend and hold harmless Licensor for any costs or expenses incurred by Licensor exceeding US $1,000,0000 (i.e., ½ of the Maximum Shared Costs); (ii) any judgment or settlement shall be collected for the benefit of Licensee and Licensor in proportion to the total costs and expenses incurred by each with respect to the action; (iii) Licensor's share of the Maximum Shared Costs shall be paid exclusively: (a) from Licensor's share of any applicable judgment or settlement and (b) to the extent not so paid

and/or pending such judgment or settlement, in the form of a credit against any and all current and future Royalties due and payable by Licensee until paid in full; (iv) if Licensor's share of the Maximum Shared Costs exceeds the sum of (a) Licensor's share of all judgments or settlements and (b) all Royalties due and payable by Licensee pursuant to this Agreement, any such excess amount shall be forgiven; and (v) Licensee shall retain final control over any major strategic decisions and/or settlement of any such action. If any such action is initiated by only one party, the non-initiating party shall provide all cooperation reasonably requested by the party initiating the action.

J.A. 262–66.

Ridge, on its own, filed suit against Appellants on September 20, 2023, accusing them of infringing the '084 patent. Two days after Ridge filed its complaint, the district court granted Ridge's motion for a temporary restraining order. On September 28, 2023, Altum filed a motion for joinder, arguing that Cold Chain is a necessary and indispensable party that must be joined as a party-plaintiff and seeking an order joining Cold Chain. On November 3, 2023, the district court granted Ridge a preliminary injunction and denied joinder of Cold Chain. The court determined that "Cold Chain transferred all substantial rights to Ridge such that Cold Chain is not a necessary party and does not need to be involuntarily joined" under Federal Rule of Civil Procedure 19. J.A. 29. The court also enjoined Appellants from: (1) continuing to manufacture, advertise for sale, sell, or further contract to sell the allegedly infringing door or any other infringing door; (2) inducing any other person or entity to manufacture, advertise for sale, or sell the allegedly infringing door or any other infringing door; (3) contributing to the manufacture, advertisement for sale, or selling of the allegedly infringing door or any other infringing door; and (4) tortiously interfering with

Ridge's business relationships.   KNL and Altum appeal. We have jurisdiction under 28 U.S.C. § 1292(a)(1), (c)(1).

## DISCUSSION

### I

Joinder is an issue not unique to patent law, so we look to the law of the regional circuit. *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010).  The Sixth Circuit reviews Rule 19(a) determinations under an abuse of discretion standard. *Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1346 (6th Cir. 1993).  "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012).

Only a "patentee" may bring a civil action for patent infringement.  35 U.S.C. § 281.[1]  A "patentee" is the party to whom the patent was issued and the successors in title to the patentee. *Id.* § 100(d).  The term "patentee" does not include mere licensees, however. *Univ. of S. Fla.*, 19 F.4th at 1319.  Whether a party is a "patentee" is "a question of law that this court reviews de novo, applying Federal Circuit precedent." *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 617 (Fed. Cir. 2016) (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010)).

---

[1]    Section 281 is "simply a statutory requirement; it does not 'implicate standing or subject-matter jurisdiction.'" *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1319 n.1 (Fed. Cir. 2021) (quoting *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019)).

"'A patent owner may transfer all substantial rights in the patents-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee,' who may then maintain an infringement suit in its own name." *Univ. of S. Fla.*, 19 F.4th at 1319–20 (quoting *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1358–59 (Fed. Cir. 2010)). "To determine whether an exclusive license is tantamount to an assignment, we 'must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted.'" *Alfred E. Mann*, 604 F.3d at 1359 (alteration in original) (quoting *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)). The Agreement in this case is governed by the laws of the State of Delaware. J.A. 269 (Agreement § 22). Under Delaware law, "a contract's construction should be that which would be understood by an objective, reasonable third party. [The court] will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage." *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citations omitted). We review the district court's interpretation of a contract de novo. *Daniel v. Hawkins*, 289 A.3d 631, 645 (Del. 2022).

We examine several rights in determining whether a licensor has transferred away sufficient rights to render an exclusive licensee the owner of a patent, including:

> the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of

any limits on the licensee's right to assign its interests in the patent.

*Univ. of S. Fla.*, 19 F.4th at 1320 (quoting *Alfred E. Mann*, 604 F.3d at 1360–61). We inspect "the 'totality' of the agreement to determine whether a party other than the original patentee has established that it obtained all substantial rights in the patent." *Id.* (quoting *Lone Star*, 925 F.3d at 1229). "[T]he exclusive right to make, use, and sell, as well as the nature and scope of the patentee's retained right to sue accused infringers are the most important considerations in determining whether a license agreement transfers sufficient rights to render the licensee the owner of the patent." *Id.*

## II

Turning to the facts of this case in light of this precedent, we conclude that the district court erred in determining that Cold Chain transferred all substantial rights to Ridge. We hold that Ridge does not meet the statutory requirement of being a patentee under 35 U.S.C. § 281 because Ridge is not an exclusive licensee with all substantial rights in the '084 patent. In reaching this conclusion, we are particularly persuaded by the Agreement's treatment of the right to sue.

We consider "first and foremost" the Agreement's failure to transfer Cold Chain's right to sue to Ridge. *Univ. of S. Fla.*, 19 F.4th at 1322; *Alfred E. Mann*, 604 F.3d at 1361 ("Frequently, . . . the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration."). Both Cold Chain and Ridge have the right to initiate a patent infringement action, and Ridge must give Cold Chain the option of initiating any such action before doing so itself. J.A. 265–66 (Agreement § 14). Retaining such control of litigation activities is "critical to demonstrating that the patent has not been effectively assigned to the licensee."

*Diamond Coating*, 823 F.3d at 620 (citation omitted). Where the licensor "retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee," unless the licensor's right to sue "is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers." *Alfred E. Mann*, 604 F.3d at 1361 (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000)).

In *Speedplay*, we held that the licensee's right to grant royalty-free sublicenses to defendants sued by the licensor rendered the licensor's right to sue illusory. 211 F.3d at 1251; *see also Univ. of S. Fla.*, 19 F.4th at 1322. Here, Ridge has "an exclusive, royalty bearing, nontransferable, sublicensable right," but the Agreement explicitly "limit[s]" that right. J.A. 262–63 (Agreement § 3). Ridge is "limited to sublicensing to those sublicensees that agree to purchase and use" roll-up door panels sold by Ridge. J.A. 262 (Agreement § 3). And Ridge must pay to Cold Chain a 5% royalty of the net sales price of all roll-up doors and door panels that Ridge sells. J.A. 263 (Agreement § 6(a)). Accordingly, Ridge's right to sublicense is "fettered" and thus "does not render illusory [Cold Chain's] right to sue accused infringers." *Alfred E. Mann*, 604 F.3d at 1362.

Ridge relies on *McNeilab, Inc. v. Scandipharm, Inc.*, No. 94-1508, 1996 WL 431352 (Fed. Cir. July 31, 1996), to support its argument that "[w]hen a license does not require the licensor to sue infringers and, in fact, negates such an obligation, there is no substantial right retained." Appellee's Br. at 19. But Ridge's reliance on *McNeilab* is misplaced. *McNeilab* involved a very different license agreement with a "negation" of the licensor's obligation to sue infringers, "not a grant or retention of a right." *McNeilab*, 1996 WL 431352, at *4. Here, in contrast, Cold Chain granted Ridge the right to sue for infringement, while retaining that right for itself as well. Our court has held that a patentee-licensor retained substantial interests

in the patents-in-suit even where the licensee had the right of first refusal in suing alleged infringers. *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1316–17, 1320–21 (Fed. Cir. 2009).

Ridge also contends that its "right to sue and control a lawsuit is completely unfettered by Cold Chain's action or inaction." Appellee's Br. at 22. During oral argument, counsel for Ridge argued that even when Cold Chain alone initiates an infringement action, Ridge has "complete rights to control the suit" and "complete control over all decision making in the suit." Oral Arg. at 12:16–12:29, 14:00–14:21, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=24-1138_06032024.mp3. Ridge's assertion is belied by the language of the Agreement.

Ridge relies on the following Agreement language: "(v) Licensee shall retain final control over any major strategic decisions and/or settlement of any such action." J.A. 265–66 (Agreement § 14); Oral Arg. at 19:30–20:08. But this language comes at the end of a list of five requirements activated only when Ridge initiates an infringement action or when Ridge and Cold Chain "cooperatively initiate a joint action." J.A. 266 (Agreement § 14) ("If Licensee initiates such action or the parties cooperatively initiate a joint action: . . . (v) Licensee shall retain final control over any major strategic decisions and/or settlement of any such action."). The contract term "Licensee shall retain final control over any major strategic decisions and/or settlement of any such action" is not activated when Cold Chain alone initiates an infringement action. When asked about this language at oral argument, Ridge's counsel responded, "there's nothing in the Agreement suggesting that Ridge would not retain this final say if Cold Chain were to initiate a suit" and "there's nothing saying that the cooperation from Cold Chain would not include deferring to the exclusive licensee's strategic decisions and settlement demands." Oral Arg. at 20:09–22:37. But the Agreement's silence on Ridge's alleged right to control Cold

Chain–initiated litigation "does not show an intent to transfer that right"; rather, it shows that Cold Chain retained that right. *Univ. of S. Fla.*, 19 F.4th at 1322. The plain language of the Agreement makes clear that Ridge has final control over major strategic decisions and/or settlement of an infringement action only when the action is initiated by Ridge or jointly initiated by both Ridge and Cold Chain, but not when Cold Chain alone initiates the action, which it can do pursuant to § 14 of the Agreement.

Under the Agreement, Cold Chain retained not only the right to sue for infringement but also "expressly retain[ed] all rights, title and interest in and to all Licensed Patents and [its] other intellectual property"; ensured that "any judgment or settlement shall be collected for the benefit of Licensee and Licensor in proportion to the total costs and expenses incurred by each with respect to the action"; retained the right to "assign, transfer or delegate th[e] Agreement or any right, license or obligation [t]hereunder"; retained the right to condition any assignment by Ridge on Cold Chain's "prior written consent"; and, among other things, ensured that the "Agreement and all of Licensee's rights [t]here-under shall automatically terminate upon the occurrence of any [violative] assignment" by Ridge. J.A. 261–70.

Because the Agreement did not convey all substantial rights in the '084 patent to Ridge, Ridge is not a "patentee" under 35 U.S.C. § 281. *Diamond Coating*, 823 F.3d at 621. Accordingly, the district court erred in denying joinder and in granting the preliminary injunction to a party that is not a patentee. Because we reach this conclusion, we do not address Appellants' other arguments challenging the grant of the preliminary injunction, though in any further proceeding the district court may wish to further consider the parties' arguments as to the merits of the injunction.

On July 8, 2024, over a month after the June 3, 2024 oral argument in this case, Ridge filed a Rule 28(j) Letter

containing "a corrected copy of the following pertinent evidence: Addendum to Amended and Restated License Agreement." ECF No. 68 at 1. Ridge and Cold Chain signed this Addendum on June 28 and 29, 2024, respectively. New evidence not submitted to the district court, however, is not properly part of the record on appeal. *See, e.g., Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000) (citing Fed. R. App. P. 10(a)); *Ballard Med. Prods. v. Wright*, 821 F.2d 642, 643 (Fed. Cir. 1987) ("An appellate court may consider only the record as it was made before the district court.").[2] The district court is the proper forum for addressing this new evidentiary development in the first instance.[3]

## CONCLUSION

For the foregoing reasons, we vacate the district court's denial of joinder and grant of preliminary injunctive relief,

---

[2] We also recognize that parties may not use Rule 28(j) to submit new evidence to the appeals court. *E.g., DiBella v. Hopkins*, 403 F.3d 102, 118 (2d Cir. 2005).

[3] We note that a *nunc pro tunc* agreement cannot establish Ridge's status as a § 281 patentee. *See Diamond Coating*, 823 F.3d at 618–19, 621 ("Unless [a party] received all substantial rights in the patents-in-suit *at the time it filed suit* in the District Court, it was not a 'patentee' . . . ." (emphasis added)); *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072, 1075 (Fed. Cir. 2020) (also asking whether a party was a patentee at the time her action was filed). As we recently explained, with respect to "[t]he issue of whether the statutory requirements of § 281 are met . . . a defect is curable by joinder." *Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024); *see also Lone Star*, 925 F.3d at 1238 ("Although [a party's] rights are less than all substantial rights, we have consistently said that the cure for this defect is to join the patent owner . . . .").

and we remand for proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs to Appellants.